Hear ye, hear ye. This Honorable Appellate Court for the Second District is now open, the Honorable Justice Anne B. Jorgensen presiding, along with Justice George Bridges and Justice Liam C. Brennan. The case is number 19-0634, In re estate of Horst A. Peppa, deceased, Deborah Peppa, petitioner-appellant, v. Royce Peppa et al., Respondent's Appellees. Arguing for the Appellant, Daniel Ebner. Arguing for the Appellees, John W. Whitcomb. All right, counsel, you may proceed when you are ready. Thank you, Your Honor. The issue presented to this court for purposes of this appeal is straightforward. It is whether the trial court should have approved the accounting presented by Royce Peppa and, subsequently, whether, after approving it, the trial court should have closed the estate. And to give the court just a little background, the underlying issue here is a will contest filed by Debbie Peppa against Royce Peppa based on a will that was executed just before the litigation. Royce Peppa continued to administer the estate. Ultimately, Royce sold most of the allegedly sold, claims to have sold, much of the personal property that was in the estate, and then filed an accounting, essentially, to get approval of that sale. So, the court, over the objection of Debbie Peppa, then approved the accounting. And the accounting, essentially, was an allegation by Royce that she had sold all of the personal property in the estate in two separate sales. Firearms in one sale to an individual named Roy Cook, and then all the remaining personal property in an estate sale, conducted by an entity called Paxim, Inc. Royce never provided, while she provided like sort of a final receipt of showing the total amount she had collected as the proceeds of the sale, she never provided an inventory of what was actually sold, or individual sales slips. Debbie objected to the accounting because there was no evidence that each of those individual, that each piece of personal property in the estate had been sold. And in objecting, she also, she provided two things. Debbie provided, one, a list of what all the assets, or not all, but she identified a number of items that she believed were part of her father's estate at the time of his death that had relatively high value, and she provided, based on her own internet searches, her evidence of what that value was. Royce did not respond with any individual sales slips. Rather, she just reiterated that she had sold everything, and the proceeds were what they were. And the trial court then approved the accounting and concluded that because the debts of the estate at that point exceeded the value of the estate, there was nothing left to administer, and dismissed the underlying will contest and closed the estate. Debbie's position is that this was against the manifest weight of the evidence because the court's decision was arbitrary and not based on the evidence that was presented. Essentially, we had Royce's say so, that she had sold everything, versus Debbie's affidavit that there were items in this estate at the time of death that were worth far more than what Royce claimed to have sold the estate for. And there was a single piece of evidence that could have quickly answered at least some of the questions that Debbie raised about the validity of the accounting. And that evidence was a collection of sales slips that Paxom Inc. generated during the estate sale. The executor's attorney, Royce's attorney, brought those sales slips to court. He offered those sales slips in emails, and then ultimately, as we state in the brief, and ultimately decided refused to provide them, and the court never compelled him to. And what these sales slips would have done is it at least would have shown if Royce had indeed sold the property that Debbie alleged had a substantially higher value than what was realized at the estate sale, and what that property was sold for. And that set of facts ties in with the case law that we've presented on when the appellate courts have reversed trial court decisions related to inventories and accountings because those approvals were against the manifest weight of the evidence, or those decisions that were related to the accountings and inventories were against the manifest weight of the evidence in the Glenose, Krohr, and Rugelberger cases. And what we have here is a case that is similar to Glenose in that there, the appellate court said the mere say-so of the administrator about what were estate assets and what weren't was not enough. And here we have Royce's say-so. I sold everything without any supporting documents showing that, in fact, she did sell everything. In Krohr, again, the say-so of the administrator that a particular asset was or was not in the case of Krohr that it was part of the estate when the inventory of the estate was the only documentary evidence presented, and that documentary evidence said it wasn't in the estate. In Krohr, the executor or administrator was the court's decision was reversed, again, because the say-so of the administrator was not enough in light of the superior documentary evidence of what the inventory said about whether the asset was or was not a part of the estate. So here, again, we have Debbie's petition, which goes into greater detail about specific assets that were in the estate or that she alleges were in the estate and the value of general say-so. I sold everything, and that sale yielded X dollars. And then finally, there is also a history of untruthfulness on Royce's part, which the Rugelberger court said was something that could be taken into account. Royce gave responses to interrogatories and discovery requests denying that the decedent had any retirement assets when, in fact, subsequent production by the employer showed that, in fact, there were retirement assets. Now, those aren't estate assets. That's not subject of this lawsuit, but it does go to her truthfulness or her general tendency towards truthfulness in this matter. So essentially, the trial court could have simply answered a number of outstanding questions by having Royce produce the sales slips that I assume still are clearly in her possession, that her attorney, in fact, brought to court, and that could easily be produced with very little cost or expense to the parties to at least answer whether the items that Debbie alleges should have been part of the estate and should have fetched a much higher value at a sale actually were sold. And I'm happy to take questions now. Justice Brennan? Justice Brennan, you're on mute. Apologize for that. Obviously, the standard of review, which I think everyone agrees on, is manifest way to the evidence. The argument, as I understand it, that the estate might be worth more than the debt and the spousal entitlement is the affidavit where your client says, you know, there are these A through F pieces of art that may be worth all these monies. And if they are worth what she says, then potentially there's a lot more money unaccounted for or value in the estate. The dollar amounts in the affidavit I mean, would it be fair to say that artwork can sell for considerably less than these types of estimates that we simply don't know? Your Honor, I think it would be, yes, it's fair to say that the artwork could have sold for substantially less. And if the artwork was sold and it was sold for substantially less, then we have a very different issue in front of us, which, you know, should the executor have gotten an appraisal first? Did she get the right value? And frankly, that would be a harder appeal than this one is. Here, the issue is that we don't even have the best, easiest to provide evidence of what was actually sold, which is the sales slips that were generated as part of this sale. So we don't know if she, you know, she could have said, here are the sales slips. A few of the items you listed were sold and they're worth way less than you claim they are. And a few of the items you listed were never part of the estate. And again, that would be a very different fight at this point. Then the issue that we're presented with, which is, is the executor simply saying, I sold everything. You don't get to see what I sold. And then the court closing the estate. Do the lawyer on the other side kept saying he would show you the itemized list of what the estate sale company sold? Did he ever have them in open court or did you ever get to see them in open court or they just were never produced? So I do want to be fair to the other side because you know, the lawyer who handled this at the trial level, I think is not, you know, on the phone right now on the other side of this. So, you know, what happened was he had them in court. I saw the stack of them. And I believe the judge saw the stack of them as well. But ultimately he refused to provide them to me to look at. And the trial court did not require him to provide them for me to look at. And do you know why? I mean, that's what we can all speculate on. And that is the... Not the why the attorney didn't ultimately let you look at them, but why didn't the judge compel it? Did he articulate a reason for that? He did not articulate a reason. I have no further questions. Justice Bridges. Yes, thank you. As a follow-up to that question, counsel, when I look at the record, wasn't there settlement negotiation on this case until the brother came in? And that was the reason that you never took or never had the opportunity to, in fact, review the receipt? Because that was my understanding is that you were moving towards a settlement until he came in and that stopped everything. Is that correct? So let me... So I can remember months. Let me make sure that I'm correct on the year here. So in June of 2018, or around, let's say, mid-summer of 2018, we had reached a near settlement, Debbie and Royce. On the final day that he could have filed a challenge to the will, the brother, my client's brother, entered an appearance and a petition to contest the will that basically mirrored the one that I had filed on Debbie Pepa's behalf. And that, I guess, blew up the settlement negotiations. We were headed towards mediation ordered by the court and agreed to by the parties, if somewhat reluctantly, when we learned that Royce Pepa, the executor, had sold all of the personal property in the estate just prior to going process of preparing statements for that mediation. But counsel, what I wanted to... You mentioned that to Justice Brennan. In fact, it was that filing by the brother that initially, or that essentially stopped the negotiations and prevented and then ratcheted everything up to the trial situation. Is that correct? I mean, we had filed a petition to contest the will, so that was on file. But we were, we, I believe, I mean, we had essentially reached an agreement subject and we were waiting to see if the brother filed. And if we'd made it one more day, yeah, probably this would have settled. And so that was the reason the sales receipts was not that important at that time. Is that correct? No, the personal property had not been sold at that time. It was sold about three months later after that. And that's what made it possible to continue settlement negotiations. All right. Counsel, can you tell me why you never sought a citation under 516-1 to compel discovery or assets and to learn their value in this case? Yeah. So the 516-1 citation, one, it applies to property that is in the hands of a third, well, not, it could be the executor or essentially not listed in the estate inventory. And so one, we don't know who purchased the personal property. And so serving them with a citation might, I mean, so I'm not sure that the citation technically is the way to proceed here. We certainly could have served a discovery site, but, sorry, let me take one quick step back. As far as discovery goes, we could have used the citation process to get that information. But we also had an open will contest that allows us to serve discovery as well. Either route is a way to discovery in an underlying probate proceeding. And so we served discovery intended to get at exactly what a citation would have. We served a subpoena on Ray Cook. Their motion to quash that subpoena was not, I don't believe, based on procedurally it being improper, but rather that it was just not necessary to the case. And we served discovery requests on Royce Peppa directed at what was sold. So we were looking at including document requests that these receipts certainly would have been responsive to. So anything we could have gotten in a discovery citation, we also could have gotten through discovery served in this will contest. And in fact, to serve discovery geared to exactly those improper, rather he said that he had adequate evidence. He felt like even though the accounting was not perfect, the evidence was adequate for him to determine that the estate was insolvent and should be closed. The trial court never entered any findings regarding the will contest, correct? Correct. None at all. And but your complaint challenged the will based on lack of capacity, undue influence. Other than in your complaint and the statement of facts that you list in your brief, you never sought to have the trial court address this. Is that correct? We were conducting discovery on it when these other events occurred related to the sale of personal property. So we have, I mean, we have discovery of the medical records, which are the main items. We have discovery of the lawyer's file in this. We were right. I mean, I think I can say that the next step about nine months after filing, which I think is appropriate progress with expert reports and fact depositions, but we had essentially conducted all written discovery on the underlying will contest by the, you know, fall of 2018. Thank you, counsel, Justice Jordanson. I have no further questions. Okay. So it's your position then that you had a settlement or close to a settlement and things, events occurred and you were set for mediation. Is that correct? Correct. And the mediation would have included the brother? It would have. Correct. All right. And while the mediation date was pending, that's when this estate sale took place? Correct. And I think the record is very clear on that. All right. Okay. Did the trial court make findings as to why it believed it had sufficient evidence to close the estate because it was insolvent? Any factual findings? So the trial court's findings were based, were based on the accounting that Royce filed. And the trial court specifically said that while there were some open questions or the accounting was not perfect, nonetheless, it believed that it had sufficient evidence to conclude that the estate was insolvent and should be closed. All right. All right. Yep. Sorry. Did you want to add something? No, I'm sorry. No, I don't. I don't. All right. Then I have no further questions at this time. Thank you. And Mr. Whitcomb, are you prepared to proceed? I am, Your Honor. You may proceed when you're ready. Thank you. My name is John W. Whitcomb from the Monaghan Law Firm. I represent Royce Pepa individually and as the court-appointed executor under the which was dated July 12, 2017. Horse's will was admitted into probate and Mrs. Pepa was appointed the independent executor on December 13, 2017. Mr. Pepa's estate consisted entirely of personal property, including but not limited to clothing, firearms, garden equipment, and a gold through Paxum and a state sale company. The state sale netted $10,197.52 after Paxum's commission. Mrs. Pepa deposited the proceeds from the state sale into a checking account with PNC Bank, where it was held pending the court order granting distribution. During the state sale, Mr. Pepa's lawn tractor was sold for $1,200. Paxum generated a receipt for that sale and pursuant to the trial court's order, a copy of that receipt was attended to appellant. Aside from the tractor, no other item sold at the estate sale for more than $1,000. And that's where we are getting into how the trial court and what discretion the trial court has in doing accountings and approving accountings. So what we are looking at here is that pursuant to section 755 ILCS 524-1A, it states in the latter part of that, that counsel state the receipts and disbursements of the representative since his last accounting and all real and personal estate which is on hand and shall be accompanied by such evidence of the disbursement as the court may require. Again, in the local rule for McHenry County, and that would be 14.06A and E, E says, each account shall to the satisfaction of the court the following categories, the assets on hand at the beginning of the period of time covered by the account, the income received during the period of time covered by the account, the disbursements made during the time covered by the account, the assets on hand at the close of period covered by the account. So the question was asked the appellant's attorney whether the court made any rulings on what would be required. And in fact, in March 19, 2019, there was an argument regarding that specific thing. During the hearing, my trial counsel for Mrs. Pepa at the time made an extended argument about the court, what would the court require in this. At this point, Mrs. Pepa's position is that it was very clear because of the amount of the award for administration of the estate, which was $33,000, and the statutory spousal award of $20,000 that there is clearly not enough money in the state for the continued and as this court can clearly see, very contentious litigation to go on that. And so the argument was made by Mrs. Pepa, and I guess the question is what might be raised as what they're looking for in terms of more detail. And he argues that there should be some limitation on the amount of detail that he has to give regarding the sales for both the firearms as well as the Paxson sale. And the court at that point does set limitations on what's going on. Appellant argued that Local Rule 1406 and 2411 of the probate act required the state administrator to provide documentation demonstrating starting assets and subsequent disbursements in detail. And in response, the court went on and disagreed with Appellant and the local rule does not provide for specific details. Instead, it only requires that the accounting be provided. The trial court did note that although there is no requirement for specificity, that the accounting did not list firearms or how many were sold. At the end of the hearing, the trial court instructed Mrs. Pepa's attorney, my trial counsel in this, to file an amended value. So when counsel says he doesn't know why those weren't required, that is in fact not true. He does know he was at that hearing. And the court, as they stated in the order, actually said that they had to account for anything over $1,000. And in the supplemental was sold out of the state. A receipt evidencing that sale was attached. And then the firearms were specifically delineated and how much they were sold for and how much they were assessed. They complied with the court's order. Now, you know, counsel has made much of that all he needs is this, all he needs is that, and it will be okay. In fact, you know, the record as a whole and the amount of attorney's fees that have been expended in this case clearly shows that that is not true. But what we do know is that the court had the opportunity to review verified accountings by Mrs. Pepa as to what she did. She did state in her objections that all the property was sold. And on March 22nd, she was put on the stand before the trial judge. And she was asked whether the state was solely personal property. She said yes. Whether there was an estate sale, she said yes. Whether the only things that weren't sold in the firearms was in the estate sale was firearms and a gold watch. She responded yes. She was asked whether the accounting was true and correct. She responded yes and sold for more than $1,000. And she responded the firearms and the lawnmower and everything else was sold by Paxom besides those things. Is there anything else you retained, she was asked. She responded no. Was all of Hort's personal property disposed except for the watch? And she responded yes. And the interesting part about this case is that you would seem from this appeal that they were never offered the opportunity to cross-examine. And in fact, in their own brief, after they admit on page 9 of their initial brief that the court held a hearing in which she was examined, they state, Royce did not make any representations to contradict Debbie's allegations in the May 2nd, 2019 objection to the supplemental accounting about the seven specific pieces of personal property Debbie contended were part of the estate when Hort's passed away. So she did say that everything was sold by Paxom and she did say that she retained nothing in the estate other than that. The issue is that they had an opportunity to cross-examine her. So the issues in this case seem to be, they say credibility because she didn't answer something that was not part of the estate. They could have asked her about her credibility and why she answered that incorrectly there. They could have gone through that. They did not. They could have asked her about the specific art and whether it was sold. And they had that opportunity and they did not ask those questions. They could ask about the gun sales and how that was conducted. They knew about all these things. They knew about the Paxom sales receipts. They could have asked what each item that she remembers was sold. They never asked her any of those questions. They had an opportunity to ask her to determine whether it was appropriate for her to make these sales, what she did, how she relied on Paxom to make those sales, and none of those sales were made. Now if we look at what the law is, the estate of Moore, she did what she was told to by the court. The court set the parameters for what the accounting should be, for what the inventory is, for what the accounting was. There was objections. She was required to do the accounting again in order to include the firearms. And then it was approved because there was no evidence here that there was more money in the estate. And clearly, if you look at the section regarding closing the estate in the spousal ward, it says shall close the estate if it outweighs. The court had no reason to keep this estate going on and on. I will take questions at this point. Justice Brennan, do you have any questions? I just, why wasn't the Paxom receipt or the facts of the information in the Paxom estate sale and what was sold and what was recovered for the items sold? Months went by and it's been, as I look at the record, it's asked for and it's never turned over. Why? So the trial court set the parameters by which what receipts had to be turned over. And they turned over those receipts. So anything over $1,000, they were turned over the receipts, except for the watch. But the issue, one of the issues that seems to be suggested is that there's a question of whether this artwork was sold in the first place. And it's listed in the affidavit. Any number of them are over $1,000. One, it's suggested is over $100,000. But I mean, the question is, were they sold in the first place? And you can honestly answer the judge's question, only tell me the things that sold over $1,000 and exclude those pieces if they weren't in the estate sale in the first place. And isn't that the question? She was asked specifically, and in the response she stated, and on the stand she was asked if everything of the personal property was sold at the estate sale. She answered yes. There's nothing retained, she answered. It's specific on the direct examination in front of the trial judge that those questions were asked. So the idea that Debbie Pepa has come up with an idea that certain things were sold or kept out is not appropriate in terms of what the judge heard. The judge had questions specifically asked in front of them. They had that information. Debbie's affidavit was already on file on May 2, 2019. The hearing took place with Royce Pepa testifying on May 22, 2019. If they actually believed that this was, could have asked all the questions that your Honor is asking. And when they had the opportunity, they asked none of those questions. They could have asked. They had lists of the eight artworks that you're saying. So if the attorney, when given the opportunity to ask the specific questions, when they have the information that is in front of them, and we know that they did because they filed an objection, does not ask the questions. And then now coming before the appellate court and saying, I never got an opportunity to ask the question. He had the opportunity and he failed to ask the question. He could have asked about all of those eight pieces of artwork. He could have done a cross-examination of Royce Pepa, whether those were included. So he is now saying that affirmatively, even though she said that she didn't generally, that she had to answer specifically answered their objections when they had an attorney at the hearing and that person asked no questions. It wasn't that she didn't answer them or didn't know or anything. They didn't ask the questions. So they come to the appellate court now and says, we wanted to ask these questions. To me, it boggles the mind that they spent this amount of money and they failed when they had Mrs. Pepa on the stand to ask her one single question about what they just talked about for 15 minutes before this court. All right. I appreciate that. Thank you. Any further questions? Yes, I have a question. Counsel, here, the trial court made it clear he was not satisfied with the accounting when he stated it was not perfect. How then can we find that the closing of the estate was not against the manifest weight of the evidence? So, you know, I think the language that the trial court used was the last accounting again is it's not perfect. I think there are challenges suggested through the contested litigation that I can't find cause to stand in front of approval of the accounting. I mean, people were not satisfied with what was going on. That is clear. They filed objections to everything that was going on. They were not happy regarding this. But the question remains is the court set the parameters for what Mrs. Pepa was supposed to do. And she did it. She provided that she provided the amount that was done. The court then determined that that since they complied with the court's parameters for what they said, that it was appropriate to close it since that was the information before the court. Okay. Can you explain to us since the trial counsel had initially indicated they would turn over the receipts, why weren't those ultimately turned over? Because the court determined only that receipts had to be done for items over $1,000. And that's what the court, the counsel turned over in the second or the supplemental verified accounting. The court set for the parameters. And I mean, there was an extended argument on March 19th about what had to be turned over. And so we can go through that argument. But the argument was that how much do we have to do with an estate this small, essentially. And it's that the other side argued that you had to turn over everything, that you had to provide specific documentation. And the court rejected that. The court said that there's no requirement of specificity and the accounting was only being done for a supplemental for anything over $1,000 and to include specifics of the gun sales, the firearm sales to be included, which the court, again, had another opportunity if there was an issue regarding what was sold, they could have asked her about it when she was on the stand. And they never asked any of those questions. Okay, counsel. Thank you. Justice, I have no further questions. All right. You know, at the risk of beating a dead horse here, I don't understand why if you have a stack of receipts, and that is the whole ball of wax here, why not just tender them? I don't understand it. You keep saying, but the trial court set different parameters based on the size of this estate. It would seem to me it was more attorney's fees to argue why you shouldn't tender what's already in your hand than to just go ahead and do it. Right. So, I mean, the judge received a verified report that the PAXM, which is an the personal property in the estate, it's evidenced by her verification. There was no verified objections that had been provided. So the counsel at trial argued that they were going around in circles and that he was willing to do it, but he wanted the court to set parameters and the court did. And those parameters were that he had to turn over receipts over $1,000. And Mrs. Pepa did that. All right. So that argument was extensive in front of the court. Both sides had the argument about what should be turned over and why, and the court made a ruling. Right. Okay. So, but you bolster that position as to why that was an appropriate course of action by saying that Debbie's counsel had an opportunity to cross-examine Royce when she testified, correct? That's kind of your fallback position. They could have asked about all of this. They could have asked what was in the PAXM sales. Okay. I caught that. Now, but if you ask her those questions without the receipt, how do you challenge what she's going to testify to? You have nothing. You just can ask her to reiterate, well, there's nothing else in the estate. Well, you didn't sell this artwork or you did sell that artwork because they don't have anything by which to challenge her on cross-examination. So isn't that a hollow argument? I don't believe it is because I for what was going to be sold and that they had an opportunity to cross-examine her on both what they had objected to and the specific artwork. They on May 2nd specifically had artwork that they alleged were in the state and they could have asked questions about it to at least establish that it was part of the state. They asked no questions, which is just as a trial attorney asking no questions about something that you're specifically objecting about 19 days early makes no sense. You know what? I'll grant you that. Some of these things that occurred in this case challenge your general chronology of cases. But if you don't have any documentation and you ask Mrs. Pepa what she did, she testifies, I would assume, then consistent with what she said on direct and you have nothing to challenge that. So I can't really fault counsel for not asking questions that simply would have reiterated and without the receipts to challenge what she testified to. And I just keep coming back to this. Were these parameters reasonable? I believe that in a state of this size that the court set reasonable parameters as to what was being done and in unverified allegations that there is hundreds of thousands of dollars in art sales is not appropriate in order for them to do it. Whether we would have had an appeal if all the March 19th hearing had turned out that it was everything over 500 or if it was everything turned over. The trial judge clearly has discretion in order to determine whether to turn over those receipts and what receipts should have been done. All right. I have no further questions. Thank you. Thank you. Anyone else? Any final follow-up questions? No, thank you. All right. Counsel, do you wish to offer a reply? I think only to make the point again, although it may not be necessary at this point, but that the key here is that it's not what was asked at that hearing. It's that we were prevented from getting the documentary evidence. We sought the documentary evidence prior to those hearings. We were prevented both in subpoenas to Mr. Cook and in discovery requests and were ultimately prevented from getting it that would have shown without any question what actually was sold in this estate sale. And that is ultimately the basis for the reversal of the order closing the estate. And I have nothing further. All right. Justice Brennan? Did you ever subpoena Paxson for the records? We did not directly subpoena Paxson for the records. However, we knew that Royce had them and we did subpoena a, again, Mr. Cook, a third party for information about the sale to him. And so I think it is fair to say. But that was related to the guns and maybe the model airplanes, but not the artwork. Correct. But we didn't know what records Royce had about the sale to Mr. Cook. We knew what records she had about the Paxson sale because we'd seen the stack of slips and they'd been subpoenaed to a third party when a party to the litigation had exactly what we wanted, unambiguously had exactly what we wanted. All right. Fair enough. They moved to Quash. Thank you. Nothing further from me. Justice Bridges? I have no further questions. Thank you, Justice. Nor do I. Gentlemen, thank you very much for your argument. We appreciate both of you being willing to do a remote argument here this morning. We are adjourned for the day and you will receive a written disposition in due time. Again, thank you very much. Thank you.